# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**CEDRIC WILLIAMS**                                                            **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 3:16cv900-CWR-RHW**

**CAROLYN W. COLVIN,[1] ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

## REPORT AND RECOMMENDATION

Counsel for Plaintiff Cedric Williams filed this action November 16, 2016, seeking judicial review of the denial of Williams' claim for Social Security disability benefits and supplemental security income.[2] Williams contends the Administrative Law Judge erred in failing to include in the hypothetical posed to the Vocational Expert a moderate limitation with regard to concentration, persistence or pace, and in rejecting the limitations of medical opinions regarding Plaintiff's mental impairments. Before the Court are [11] Williams' motion to reverse the Commissioner's decision, and [12] the Commissioner's motion to affirm.

### Facts and Procedural History

At age 54,[3] Williams applied for disability insurance benefits and supplemental security income on June 24, 2013, alleging inability to work since December 15, 2012 due to depression, anxiety, back pain, shoulder and stomach problems. [9, p. 70, 89] The claims were denied initially on October 25, 2013, and on reconsideration on November 12, 2013. [9, pp.108-09, 128-129] Williams requested a hearing, which Administrative Law Judge (ALJ) L. Dawn Pischek conducted on March 5, 2015, hearing testimony from Williams and Vocational Expert (VE) Stephanie May. [9, pp. 140, 34-69]

---

[1] Nancy A. Berryhill is now Acting Commissioner of Social Security.

[2] Williams has been represented by counsel since November 11, 2013. [9, p. 144]

[3] Williams was born in September 1958. [9, pp. 37, 70, 169, 173]

Williams has never been married, and at the time of the hearing had been living for about a year with a female friend who took him in when he had no place to stay. He has no money or work, and testified he has a drivers license but does not drive now because he is depressed. He has an 8th to 9th grade education,[4] was never in special education classes, but failed some grades. Williams stated he can read and write "a little bit" and can sign his name, but he has never worked in a job where he had to read. His work history consists of being a logging cutter from 1987-2004 and 2007-2009; a garbage collector from September 2011- January 2012; and in "shipping/handling" (unloading trucks) at a Walmart from September 2012 - December 15, 2012 (the day he contends he became disabled).[5] [9, pp. 39-40, 191] He stated he was working in Kansas, but came back to Mississippi in December 2012 because his mother was sick [9, p. 40], but later testified he was fired from his job in Kansas. After returning to Mississippi, Williams was living with his sick mother in a house owned by his aunt. His uncle made him get out of the house and his mother went to live with a niece who did not have room for him. He stays with friends then moves on. He receives $100-180 a month in food stamps. He testified he looked for work after he returned to Mississippi, but did not apply for any jobs, claiming he cannot fill out an application due to his depression. Williams stated he has been depressed for years, that he saw a friend get killed 25-30 years ago and it stays on his mind. He worked for many years since then, but testified he was depressed while he was working in 2012, and is now depressed because he has nothing and nowhere to live.

---

[4] He testified he went through about the 9th grade, told Dr. Boggs he had an 8th grade education, and told Weems Mental Health that he dropped out of school in the 10th grade. [9, pp. 39-40, 296-98, 282, 284]

[5] Williams' wage records appear to agree with these dates, although the record indicates elsewhere that he collected garbage in Philadelphia, MS from 2005-2007, and that he worked at Walmart from 11/15/2009 - 12/30/2009. [9, pp. 183, 237]

Williams claims he is disabled by depression which keeps him from staying focused, his mind drifts. [9, pp. 39-46, 49-51] He usually goes to Weems Mental Health about once a month, where he sees Dr. Palmer[6] and counselor Shelley Young, to whom he talks about his depression. Williams has stated neither medication nor counseling has improved his condition since he has been going there. He testified depression keeps him in bed or just lying around watching television. He stated he cannot stand long, but takes out the garbage and helps sweep, although it is hard due his back problems. [9, pp. 47-8] Elsewhere, he indicated he mops, sweeps, is trying to learn to cook, cuts grass for his friends, gardens, shops for supplies and groceries, and spends time with Mrs. Linda and Cheryl every day he can. [9, pp. 209-12] Williams testified his right shoulder, back and stomach problems and pain also affect his ability to work. X-rays show he has mild arthritis in his shoulder; he can lift his arm above his head, but has pain. He testified he takes no pain medication, but takes Advil at times. [9, pp. 43-46, 52-56] Williams testified he can stand for about 30 minutes and sit for a like period, that he has trouble bending, stooping, etc. He stated he could not climb stairs. He smokes, but does not drink. [9, p. 61]

Vocational Expert (VE) Stephanie May testified that Williams past work as a material handler (shipping and receiving) is heavy work with an SVP of 3; garbage collecting is very heavy work, SVP 1, and logging (tree cutter) is heavy work, SVP 3.[7] Considering an individual of Williams age, with limited education (functionally illiterate), and his past work; who is limited to medium level exertion; cannot climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; can frequently balance, stoop, kneel, crouch, and crawl; can frequently, but not constantly, reach with his right upper extremity; and cannot be exposed to heights or

---

[6]Palmer is actually a Nurse Practitioner.

[7]Specific Vocational Preparation (SVP) level refers to the amount of time required for a typical worker to learn how to do the job.

hazards; who can understand, remember and carry out simple verbal instructions, can do work requiring only simple work-related decisions, with occasional changes in a routine work setting, and can respond appropriately to supervision and coworkers, VE May testified such a person can perform unskilled work such as a dishwasher, a hospital cleaner or a janitor, all of which are medium work, SVP 2.  [9, pp. 65-67]

On May 18, 2015, ALJ Pischek issued a 13-page decision concluding Williams was not disabled under the Social Security Act from December 15, 2012 through the date of the decision. [9, pp. 14-26]  By order of October 3, 2016, the Appeals Council denied review [9, pp. 5-7], which led to Williams' filing the action before this Court.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  To determine whether substantial evidence supports the decision, the Court reviews the entire record.  *Villa*, 895 F.2d at 1022.  The Commissioner resolves issues of credibility of witnesses and conflicts in the evidence; the Court may not re-weigh the record evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); Audler *v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d

552, 555 (5th Cir. 1995)); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse the Commissioner's decision if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Commissioner's decision "is accorded great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

<u>Law and Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). Williams bore the burden of proving disability which kept him from engaging in substantial gainful work, *i.e.*, work involving significant physical or mental activities and usually done for pay or profit. *Masterson*

*v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Pischek applied the correct law for determining disability, following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At Step One, Judge Pischek found Williams had not engaged in substantial gainful activity since his alleged onset of disability on December 15, 2012. At Step Two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, which meets the duration requirement and is severe, *i.e.*, which significantly limits the ability to perform basic work activities. ALJ Pischek found Williams has severe impairments of degenerative disc disease, arthropathies, affective disorder and anxiety.

Judge Pischek found Williams' diagnoses of "rule out mild dementia, history of psychotic disorder," GERD, reported head trauma and headaches, COPD, hypertension, and decreased vision are not severe impairments as the evidence demonstrates those conditions are either controlled by medication or have no more than minimal effect on the ability to work. The ALJ found mild dementia and history of psychotic disorder "were not confirmed elsewhere in the record," and the record as a whole does not substantiate dementia or psychosis. The ALJ found the record contains no acceptable medical source diagnosis of psychotic disorder and documents no objective signs or clinical evidence of such a condition. These findings are supported by substantial evidence including the fact that Williams had never had psychiatric hospitalization [9, p. 297], and his records from Weems Mental Health report no positive signs of psychosis or major affective disruption [9, pp. 280, 382]. Record references to gastro-

esophageal reflux disease (GERD) are generally limited to history Williams gave medical care providers [9, pp. 292-294, 296-298]; he was prescribed Pepcid in 2012, his prognosis was good in 2013 [9, p. 314], and he was stable in 2014. [9, p. 335]  Although Williams stated he had been hit in the head by a logging tongue years earlier and had headaches, the record contains neither documentation of such an accident nor medical records of treatment for headaches. Other than in the history he gave Dr. Boggs in September 2013, the undersigned noted only one mention of "severe headaches" (in a November 2013 disability report which Williams provided), and saw no record reference to any medication being prescribed for headaches.  [9, p. 229]  It appears Williams has never listed headaches as one of the conditions leading to his disability. With respect to COPD, Williams' medical records report effortless breathing and clear, normal breath sounds [9, pp. 321, 322, 324, 329]; and he has continued smoking, [9, 292-94, 321, 329, 332, 342], although he appears to have denied being a smoker during his pulmonary function testing.  That test indicated only mild restrictive ventilatory impairment.  [9, pp. 303, 310]  It also bears noting that Williams' records show a year-long gap in medical treatment from July 2012-July 2013, which encompasses the date he alleges he became disabled, December 15, 2012.

      Step Three requires the ALJ to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment/combination of impairments is of such severity and meets the duration requirement, the claimant is disabled, otherwise the analysis continues to Step Four.  Based upon all the evidence, ALJ Pischek found neither Williams' medical impairments nor his claimed mental impairments meet the applicable Listings.  Specifically, arthritis in his back and right shoulder fail to meet the criteria of Listings

1.02 (major dysfunction of a joint) and 1.04 (spinal disorders), and his mental impairments fail to meet the criteria of 12.04 (bipolar and related disorders) and 12.06 (anxiety-related disorders). [9, p. 17]  With respect to the mental impairments, the ALJ found a lack of evidence of marked limitations or restrictions, instead finding Williams has (1) mild restriction in daily living activities, (2) mild difficulties in social functioning, (3) moderate limitation in maintaining concentration, persistence or pace, and (4) no episodes of decompensation.[8]  [9, p. 19]  Judge Pischek fairly summarized and accurately cited the record evidence supporting these findings.

At Step Four, the ALJ determined from the whole evidence, that while Williams could not return to his former heavy jobs, he had the residual functional capacity (RFC) to perform medium work[9] with the additional limitations stated in the hypothetical question directed to the VE.  At Step Five, the VE considered Williams' age, education, work history and residual functional capacity, and testified he could perform the unskilled, medium work of a dishwasher, a hospital cleaner or a janitor.  [9, pp. 65-67]

Williams first argues the Commissioner's decision must be reversed because Judge Pischek's hypothetical to the VE did not incorporate a limitation consistent with her finding of "moderate limitation in the category of concentration, persistence or pace."  [11, p. 13]  However, the ALJ also noted, and mental health records document, intact memory [9, pp. 280-282], intact concentration/attention [9, pp. 280, 282, 367, 360], fair to minimally impaired

---

[8]The mental listings require marked restriction in at least two of the numbered criteria or a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and one of the following symptoms: repeated decompensation episodes, disease process resulting in such marginal adjustment that minimal increase in mental demands or change in environment would cause decompensation, or history of 1+ years' inability to function outside highly supportive living arrangement.  20 C.F.R. Part 404, subpart P, appx.1, § 12.00, *et seq*.

[9]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c);

judgment [9, pp. 367, 360, 280, 382, 332, 371, 319, 284-91], good to fair/adequate or minimally impaired insight [9, pp. 319, 332, 280, 382, 367, 360, 284-91, 360, 371), average intelligence [9, pp. 280, 282, 360, 375], and organized, logical thought processes. [9, pp. 360, 367, 280]  The undersigned finds no inherent incompatibility between the ALJ's psychiatric review technique and residual functional capacity findings.  Williams, himself, indicated his conditions did not affect his concentration and stated he follows spoken instructions "very good." [9, pp. 213-14] The RFC restricting Williams to work requiring only simple verbal instructions, simple work-related decisions and occasional changes in routine addressed the particular mental limitations the ALJ found for Williams.  The VE testified Williams could work as a dishwasher, hospital cleaner or janitor, and Williams has failed to show such work is beyond his capabilities.  The undersigned finds this asserted error without merit.

In an argument unsupported by any authority, Williams next challenges the evaluation of the medical evidence in the case, alleging ALJ Pischek employed a "cherry-picking approach" to support her conclusions as to Williams functional limitations due to mental impairments. Having reviewed the ALJ's decision along with the record in its entirety, the undersigned finds Judge Pischek thoroughly considered the medical evidence, including the opinions of Dr. Johns, Dr. Boggs and Nurse Practitioner Palmer, and articulated her reasoning for the weight she assigned to each.  Several pages of the 13-page opinion are devoted to such evaluation.  [9, pp. 16-24]  For instance, while consultative examiner Dr. Boggs considered diagnoses of dementia and psychotic disorder and considered him to be of low average to borderline intelligence, no acceptable medical source ever diagnosed Williams as suffering from dementia or psychosis, and his treatment records at Weems Mental Health consistently found no objective evidence of psychosis, and reported he was of average intelligence.  And Dr. Boggs indicated Williams put

forth questionable effort on the September 2013 examination, and appeared "to have abstained and evaded for the sake of disability." [9, pp. 96-98]  Still, the ALJ gave some weight to Dr. Boggs opinion "to the extent that it supports a finding of significant, but not disabling limitation." [9, p. 23]

The ALJ rejected Dr. Johns findings of moderate limitation in daily living activities and social functioning as those findings were inconsistent with Williams' actual activities (sweeping, mopping, mowing grass, learning to cook, taking out garbage, shopping, gardening and spending time with friends) as well as other record evidence, including reports that medications improved his condition, his moods were stable, and his mental status exams were mostly normal.  An impairment which can reasonably be remedied or controlled by medication or therapy cannot serve as a basis for finding disability.  *Johnson v. Bowen*, 864 F.2d at 348.  Even Dr. Johns found no significant limitation in Williams' ability to work in proximity to others, interact with the public and get along with coworkers.  The ALJ gave Dr. Johns' opinion partial weight, adopting his assessment of moderate limitation with regard to concentration, persistence or pace.  Judge Pischek also gave only partial weight to nurse practitioner Palmer's opinions due to lack of adequate explanation or clinical evidence to support them, again noting that Williams treatment records at Weems Mental Health reflect mostly normal mental status exam findings.  Palmer's "explanation" consisted of simply listing Williams' self-reported complaints.  Williams' subjective complaints alone provide insufficient basis to establish a disabling impairment; subjective complaints must be corroborated by objective medical evidence.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  An ALJ may discount an opinion unsupported by medically acceptable clinical, laboratory or diagnostic techniques or otherwise unsupported by the evidence.  *Newton v. Apfel*, 209 F.3d 448, 455-456 (5th Cir. 2000).

The ALJ also considered Williams' year-long gap in treatment from July 2012 to July 2013. The "failure to seek treatment for depression is an indication of nondisability." *Doss v. Barnhart*, 137 Fed. Appx. 689, 2005 WL 1463178, at *1 (5th Cir. 2005) (citing *Villa*, 895 F.2d at 1024). Such an "indication of nondisability" seems particularly apt here, considering Williams' claim that he became disabled in December 2012. Williams again reported improvement of his depression after resuming treatment in 2013. [9, pp. 316, 371, 374]

## RECOMMENDATION

The undersigned finds upon consideration of the entire record of proceedings below and controlling law, that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards. The undersigned recommends that Williams' motion be denied, the Commissioner's motion be granted, and the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

A party has 14 days after service of a copy of this Report and Recommendation to serve and file with the Clerk any written objections to it. *L.U.Civ.R.* 72(a)(3). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. Responses to objections must be filed within seven days after service, or the opposing party must notify the District Judge that he does not intend to respond to the objection. A party who fails to timely file written objections to the Report and Recommendation is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 15th day of November, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE